2:25-MJ-04147-DUTY

FINDING RE PROBABLE CAUSE

On <u>July 5, 2025</u>, at <u>10:42</u> a.m., Agent Andrew Kim of Homeland Security Investigations appeared before me by telephone regarding the probable cause arrest of defendant Noe Salgado Vacilio, occurring on July 4, 2025, at Inglewood, California.

Having reviewed the agent's statement of probable cause, a copy of which is attached hereto, the Court finds that there **exists/does not exist** probable cause to arrest the defendant for a violation of Title 18, United States Code, Section 111(a)(1).

/__x__/ It is ordered that defendant Noe Salgado Vacilio be held to answer for proceedings under Federal Rule of Criminal Procedure 5 / 40 on _____.

/____/ It is ordered that defendant Noe Salgado Vacilio be discharged from custody on this charge forthwith.

DATED: <u>July 5, 2025</u>, at <u>10:42</u> a.m.

_____
HON. PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE

**AFFIDAVIT**

I, Andrew Kim, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against Noe Salgado Vacilio ("VACILIO") for a violation of 18 U.S.C. § 111(a)(1): Assault of a Federal Agent.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates and times are on or about those indicated.

## II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), and have been so employed since September 2015. I am currently assigned to HSI Los Angeles Border Enforcement Security Task Force – Weapons group which is responsible for investigating criminal violations of United States export laws related to the export of military items, the export of controlled, "dual use" commodities, and exports to sanctioned or embargoed countries. Before working with HSI, I was a Border Patrol Agent with the

United States Border Patrol, an agency within DHS, for approximately eight years.

4.  In 2007, I attended and completed the United States Border Patrol Academy in Artesia, New Mexico.  In 2015, I attended and completed the Criminal Investigator Training Program and HSI SA Training at the Federal Law Enforcement Training Center in Glynco, Georgia.  During my employment with DHS, I have received formal and specialized training in federal laws and regulations relating to export investigations, specifically the illegal export of sensitive goods and technologies, counter-proliferation and export control violations.  I have also participated in the execution of search warrants that were issued to obtain evidence related to violations of federal criminal laws.  Through my training and experience and that of other more experienced agents, I have become familiar with a variety of means through which individuals and entities export controlled parts in violation United States law.

### III. STATEMENT OF PROBABLE CAUSE

5.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

   a.  On July 4, 2025, at approximately 10:45 a.m., United States Border Patrol Agents ("BPAs") assigned to Operation At Large – an interior immigration enforcement operation based in the Los Angeles, California area and surrounding cities – were conducting an immigration enforcement

action at a shopping plaza located near the intersection of Crenshaw Boulevard and West Century Boulevard in Inglewood, California.  Inside of the shopping plaza was a Home Depot and an El Super grocery store.

      b.   BPA J.F. was in a Border Patrol vehicle with three other agents.  As the vehicle passed the east side of El Super, BPA J.F., who was sitting in the front passenger seat of the vehicle, saw what appeared to be several individuals fleeing from other BPAs conducting the immigration enforcement action.

      c.   BPA J.F. exited the vehicle and verbally identified himself as a BPA to the fleeing individuals.  BPA J.F. was also wearing his Border Patrol uniform and vest with identifying agency markings.

      d.   As BPA J.F. attempted to detain one of the fleeing individuals, later identified as VACILIO, VACILIO turned around, squared up to BPA J.F., and swung at BPA J.F. approximately three times with his fist.  All of VACILIO's punches made impact with BPA J.F.'s helmet.

      e.   In response to being assaulted by VACILIO, BPA J.F. took out his baton and struck VACILIO's leg twice.  VACILIO then attempted to flee, but BPA J.F. pinned VACILIO to the wall and placed handcuffs on VACILIO's left wrist.  VACILIO continued to actively resist having his other wrist from being handcuffed.

      f.   BPA R.A. saw VACILIO square up to BPA J.F. and throw at least one punch at BPA J.F., and called for assistance.  BPA R.B. eventually responded to the scene and assisted BPA J.F. in placing VACILIO onto the ground.

      g.    BPA R.B. showed VACILIO his Oleo Resin Capsicum ("OC") spray and warned VACILIO that he would be sprayed if he did not comply.  VACILIO continued to resist, and BPA R.B. deployed his OC spray on VACILIO's face.  VACILIO loosened his arms, and BPAs were able to place handcuffs on VACILIO.

    6.    After VACILIO was detained, VACILIO identified himself by name as VACILIO and admitted that he was an alien without legal status in the United States.

    7.    VACILIO was subsequently arrested for immigration violations and booked into custody at Immigration and Customs Enforcement's Enforcement and Removal Operations ("ERO") in downtown Los Angeles.  During the booking process at ERO, VACILIO's fingerprints were entered into the National Crime Information Center ("NCIC") database which confirmed that VACILIO was assigned FBI Number 294405MD9.  Based on my training and experience, I know that the NCIC database tracks and records arrests and convictions of individuals according to an FBI number. I further know that these records are entered into NCIC under a specific FBI number only after a person's identity has been verified by fingerprints.

    8.    On July 4, 2025, I reviewed NCIC printouts for FBI number 294405MD9 assigned to VACILIO.  The records show that VACILIO has used aliases including Noe Javier Salgado-Vacillo, Noa Salgado, Noe Salgado, and Javier Salgado.  Records further indicate that on July 31, 2011, VACILIO was arrested by Immigration and Customs Enforcement, Enforcement Removal Operations and was placed into immigration removal proceedings.

9.   On July 5, 2025, I reviewed an immigration records database indicating that VACILIO had failed to appear for his immigration hearing and, on September 6, 2018, an Immigration Judge ordered VACILIO removed from the United States in absentia.

## IV. CONCLUSION

10.  For all of the reasons described above, there is probable cause to believe that VACILIO has committed a violation of 18 U.S.C. § 111(a)(1).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 5th day of
July, 2025.

---

HONORABLE PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE

5